The next case is Yak v. BiggerPockets. May it please the Court, my name is Steven Fairchild of Fairchild Law for Ms. Yak, the appellant. And I'd like to direct the Court to several glaring high-level problems that we have with For context, this is a 12b6 motion that was dismissed under and under the law that all factual disputes must be read in the light most favored for the non-moving party. And we believe that the lower court did not do this in dismissing the complaint. I'm sorry, you also have a 12b2 personal jurisdiction issue, right? We think that's sort of intertwined as well because there are factual issues that play a part of that, Your Honor. Okay, thank you. Mr. Fairchild, I'm having trouble understanding the theory of this case. You agreed there was an agreement between your client, right? Yes, Your Honor. The agreement did not prohibit resale of the forms, right? There was nothing. You don't even allege there was some prohibition in the agreement that was reached, correct? The agreement was silent as to that, Your Honor, yes. Okay, so it's not a breach of the agreement, right? There was no such restriction, right? We believe that would go to the ‑‑ in construing the agreement, it plays into the claim for unjust enrichment. I know, but if there's an agreement, you don't have an unjust enrichment if there's an agreement between the parties. There is no unjust enrichment when there is no agreement, right? We believe that it was without ‑‑ If I say I need forms, you sell me the forms, we have an agreement, you're going to give me the forms. You don't restrict what I can do with the forms once I get them. You can't then sue me for unjust enrichment if I make money off the forms, right? Well, Your Honor, we believe that is outside of the scope because what their actions are illegal. What they're doing is the illegal practicing law without a license. So a reasonable attorney would not ‑‑ I'm trying to decide whether that's true or not. They obviously cite a lot of New York cases that say otherwise. But what does that have to do with whether or not there's a breach of the agreement? If I do something with what you sell me that's illegal, what does that have to do with the agreement? Your Honor, this is one of the issues that we have with the lower court opinion, that whether or not it was within the scope of the agreement, it construed it two different ways within the same opinion itself, that under the unjust enrichment analysis,  and then when construing the consensus forum selection, that it construed the outside of the scope of the agreement, Your Honor. In the fraud claim, there's no affirmative misrepresentation that's alleged. We do allege that, Your Honor. What was said that defrauded your client? I think the phrase was, I forget, that was understanding that it wouldn't be resold. That's not for fraud. That's not sufficient. What was the statement? The statement was that Ms. Curlock would obey all applicable laws, and practicing law without a license goes against applicable laws, Your Honor. So your entire theory of the case relies on your claim that this was an unlawful practice of law by the defendants? It is a big part of it, Your Honor. Yes. So then how do you address the cases that they cite from New York, the Dacey case? The Dacey case. The Dacey case is inapplicable because it was actually, the forms that issue were written by non-attorneys. This was written by an attorney, and it's actual work product for a particular client. And also, their agreement, or defendants... But it's not whether it's between the appellee and your client. It was for a particular client. But the question is the use of the forms generally. They wouldn't know it was a general form. It wasn't specific to any client. Well, the way the forms were originated is a very different issue than what happened in Dacey, Your Honor. And also, the way that defendants are reselling these forms, it would actually violate New York's law about splitting fees between attorneys and non-attorneys. They're collecting revenue based on this attorney work product. And because that's another factual distinction between a deficit from Dacey... I don't understand that argument either. There was no splitting of fees here. The money was paid for the forms, and that was the end of it. Where's the splitting of fees? Defendant's BiggerPockets is getting the money from the money... I'm sorry, from the work product that Ms. Yak had done. And so, therefore, that if they had agreed to this, then Ms. Yak would have actually been agreeing to splitting fees for her work product with her own client, with BiggerPockets. And we believe that's illegal under the New York ethical rules for the practice of the law. They didn't do that. They didn't split fees with your client. You're saying if they would have agreed to that, it wouldn't... But that is how we believe a reasonable real estate attorney would construe the contract as they present it, Your Honor. A reasonable real estate attorney would not agree to what they say they agreed to. What about the personal? I know you said it's intertwined, but obviously, independently satisfied personal jurisdiction. Yes. How do you do that here? We believe that, well, that it was outside the scope of the agreement. So you can have... And, therefore, it goes unjust enrichment, but also the fraud that was performed by Mr. Curlup and the material misrepresentation by him to Ms. Yak. We believe that these are tortious acts committed in New York. What was the injury that was caused in New York that you've alleged? Ms. Yak was damaged, Your Honor. And how was she damaged? She, well, by defendant's resale of her work product, that hurt her because she suffered an economic injury. You're essentially arguing that she suffered a financial injury as a New York resident because they didn't share the revenue from the sale of the forms and she supposedly lost Connecticut clients. But there are a lot of cases that say the residence of the injured party in New York is not a sufficient predicate for jurisdiction. So the mere fact that she suffered financial harm, even taking that as true, would not be enough. Okay. I see I'm out of time. May it please the Court, J. Brown for the defendant's appellees. Your Honor referred to the issue of personal jurisdiction, and that is what I'd be inclined to focus my time on, although I'd be, of course, happy to take other questions on other topics that the panel may have. Here we have both a corporation and an individual based in Colorado, as alleged by plaintiff they do business throughout the country, with respect to the provision of forms for real estate transactions. And as alleged by the plaintiff, through a website matching service for would-be clients and would-be lawyers, sought out an attorney to provide forms for Connecticut real estate licenses. As it fortuitously happens, the attorney to whom they were connected via that website was located in New York. But plaintiff does not allege, nor would it be reasonable to infer from what plaintiff does allege, that the defendants had any reason whatsoever to affirmatively seek out a New York attorney in order to prepare for them Connecticut-related real estate forms. Indeed, plaintiff even alleges that the defendants separately sell a package of forms for Connecticut leases, which, excuse me, for New York leases, which the plaintiff was not involved in the preparation of. In these circumstances, the district court correctly held that plaintiff is unable to satisfy any of the four requirements to establish jurisdiction under 302A32 over either of the defendants. And although I'll return in a moment to the issue of unauthorized practice of law and why there was none here, and therefore the first two requirements, tortious act outside the State, causing injury in the State, aren't satisfied, there's a simpler answer to why there isn't jurisdiction under 302A32, which is the third and fourth elements, which the Court has already drawn attention to in its questions. Ms. Yak would have been required to plead injury in New York, and the mere fact, as is well established by the case law, that she's a resident of New York without more doesn't satisfy that prong. And indeed, there is not a single allegation in the complaint related to loss of New York business as a result of defendant's conduct. And moreover, with respect to... Certainly that would be a possibility, right, that if they're Connecticut forms, that you would have New York residents on the border between New York and Connecticut who might be using those forms in connection with real estate in Connecticut, right? That's not a far-fetched... It is theoretically possible, Your Honor, but again, there's no allegation of any specific such loss of business for the plaintiff. And here, although it is certainly true, as plaintiff alleges, that Ms. Yak's New York address was visible on some of the communications with her, the fact is the defendants would have had no reason to know that particular harm related to their Connecticut project would befall the plaintiff in New York. So on the statutory factors, the third and fourth statutory factor, the district court correctly held that on each of those, the plaintiff had failed to make the requisite allegations or showing. And for each of those independent reasons alone, there is no jurisdiction under the long-arm statute. Again, I'll return in a minute to the tortious injury portion. But it requires affirmance... If the district court was right on any one of the four factors, affirmance on the personal jurisdiction question is required. And importantly, there is the separate question of constitutional due process here. The district court did not address that ground, which was raised below by the defendants, precisely because it held that the long-arm statute wasn't satisfied. But under federal due process, of course, it is the suit-related conduct that has to create a substantial connection to New York. And the cases under the federal standard, much like under the state long-arm statute, are clear that the mere fact that injury occurred to a resident of the state is not sufficient connection to satisfy due process. And here, as the record clearly and indisputably reflects, there are no other connections between the conduct sued upon here and these defendants and New York State than the coincidental fact that this Connecticut-licensed attorney happens to reside in New York. And for that reason, we equally submit that the plaintiff cannot satisfy the constitutional due process standards for jurisdiction here. Wouldn't they be arguing something like there is an allegation in paragraph 77 that Plaintiff Yack has been deprived of revenue and income and the loss of royalties, the work and services provided to other Connecticut landlords who are members of your client's service, and that, you know, this is in connection with the unauthorized practice of law in the state of New York, and I assume that bigger pockets, if I understand correctly, could be found to be engaging in the sale of its products in New York and Connecticut. You know, that isn't sufficient, I take it, in your view. No, Your Honor. If anything, those facts would be relevant to an allegation of general jurisdiction, but there is... Plaintiff has not argued for general jurisdiction and with good reason because there's no basis on which to suggest that bigger pockets is at home in New York, that its business here is so substantial. Rather, it has a national Internet-based business through all 50 states, some of which is directed to New York. But if there was an allegation that said, we allege that New York residents are utilizing these Connecticut forms in New York and I'm losing business because of that, wouldn't that be enough at this stage? Not as stated, Your Honor. If plaintiffs were able to identify particular instances of business loss rather than conjecture that there might have been lost business, we would be in a different situation on that particular point. But nevertheless, for all of the other reasons, there still would not be jurisdiction here. With respect to the unauthorized practice of law, which counsel concedes really is the major issue here, both as to jurisdiction from the plaintiff's perspective and with respect to the district court's ruling, ruling in the alternative that plaintiff had failed to state any of the causes of action adequately, the court already has referred to the Dacey case, which I think is absolutely dispositive of the question under New York law. The only difference between the facts of this case and the Dacey case, to which a plaintiff can point, is that in the Dacey case, apparently, there's certainly nothing in the record in that case to suggest that Mr. Dacey consulted a lawyer before distributing his work. But there is absolutely nothing in the New York cases to suggest that if a layperson who wants to sell a book of forms to the public consults a lawyer to make sure that what they've come up with doesn't strike the lawyer as half-baked and then goes ahead and sells to the public, not representing himself or herself to be a lawyer, there is not a single case under New York law that suggests that converts the non-lawyers' activity into the unauthorized practice of law. Let me ask a different question. I mean, there is something that feels somewhat unfair about this, and that's why I think we've seen kind of a shifting of theories of recovery, both in the complaint and then on the appeal, where Ms. Yak prepared these forms, and then they became incorporated into a commercial product that she had no knowledge of, and I don't know whether she's credited with them or whatever. You know, what should she have done? Should she have copyrighted her forms? Should... And given a license to your client so that there would be a sense that both parties knew what they were entering into? I mean, she appears... She alleges that she was... had misconception based on Mr. Kirlop's representations to her about what was going to be done with her forms. She clearly thought she was entering into, like, an attorney-client relationship. So I'm a little... This isn't to necessarily breathe life into any of the claims that have been pled, because I... You know, there was a contract. It was kind of after the fact. We don't even know who was signed and so on and so forth. But, you know, can you tell me anything that should assuage my concerns about kind of a nagging sense of unfairness here? Indeed, Your Honor. Two important points. First of all, it bears emphasis that even as alleged by Ms. Yak, the defendants provided her with a packet of lease forms belonging to them that they created from Colorado and asked her to make any changes necessary to bring them into compliance with Connecticut law. So this is not a situation in which she exercised... And I'm out of time, if I may continue for a moment. This is not a situation in which she exercised creativity to create a new product that then a client resold. I don't believe even then it would create these causes of action. But significantly, she was given the defendant's existing work product, albeit for a different state, and asked to make that work product conform. Plaintiff does not allege to what extent changes were necessary that she authored. You can see from the copy in the record that a significant part of it is simply a form produced by the state of Connecticut that accompanies as an exhibit the fill-in-the-blank forms. And with respect to copyright, Your Honor, again, we don't know exactly from this record what she contributed that would be original authorship. But a form that has name and a blank is not subject to copyright in the first instance. And to the extent state-authored language was included, which is the bulk of the packet, that likewise wouldn't be copyrightable. But yes, if there were properly copyrightable expression, then a lawyer could, of course, act on their rights if someone were reselling it without permission. It is significant that Missyak has not attempted to estate a copyright claim here. In addition, of course, a lawyer could impose as a condition of contract that the client may not resell work product. Now, much lawyer work product isn't meant to be resold. It would be a waiver of attorney-client privilege. It contained private matters that clients wouldn't put out. But non-lawyer clients profit, derive profit, all the time from work product created by lawyers. That is the very nature of the commercial documents and other materials created in the non-litigation context for clients. Here, yes, there is a retail transaction between the defendants and their customers. But that should have no legal significance for analysis of the issue here. And I realize I'm well over time. Unless the Court has a question, we'll rest on our papers as to the remainder. Thank you. Thank you. Thank you both. And we'll take the matter under advisement. OK. That's the last? I think you said some rebuttal. Oh, I'm sorry. We'll hear rebuttal. I reached out with my notes, but I'll probably just do it. It's all fine. First off, that we. Well, I think that this underscores the necessity of discovery. First off, who was harmed? Where were these things being sold? There has been some discussion for settlement purposes. I won't go into detail, but how many they were sold. But we don't know the specifics as to whom they were addressed. And so the level of misinformation about Ms. Yack's injury remains unknown to Ms. Yack. And also, for the last points, that a big contention that we believe. I'm sorry. A big factor that separates this from DACY is that BiggerPockets at the time, the website has changed, was selling these things as a substitute for legal advice. They had four client testimonials about how great these were, that you don't need another attorney, that these things were legally sufficient. And to make that claim, we believe that only a lawyer can do that. Only a lawyer can say this is legally sufficient. Not BiggerPockets, not Craig Curlup. And therefore, that constitutes a legal practice of law. By setting themselves out as an attorney, by saying these are legally sufficient, that is, in and of itself, soliciting an attorney-client relationship. With that, thank you for your time, Your Honors. Thank you. Thank you both. Sorry for the mix-up. And we'll take the matter under advisement. Thank you. That's the last case to be argued this morning, so I'll ask the clerk to adjourn the court. Court stands adjourned. Thank you. Thank you.